GARY R. GUELKER (8474)
**RESNICK & LOUIS, PC**
222 South Main Street, 5th Flr.
Salt Lake City, Utah 84101
Telephone:  801-960-3655
Email:  gguelker@rlattorneys.com
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| JON D. NICHOL<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>48 STATES TRANSPORT, LLC, a Florida limited liability company, 48 STATES TRANSPORT, LLC, a Tennessee limited liability company; JEFFREY SAINT JULIEN, and JOHN DOES 1-10.<br><br>　　　　Defendants, | **NOTICE OF REMOVAL**<br><br>Case Number<br>Judge<br><br>[Formerly First District Court, Rich County, State of Utah – Case No. 210100040] |

Defendants 48 States Transport, LLC ("48 States")[1] and Jeffrey Saint Julien hereby remove Case No. 210100040 from the First Judicial District Court, Salt Lake County, State of Utah to the United States District Court for the State of Utah, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, and as grounds for its removal state as follows:

---

[1] Plaintiff has named 48 States Transport, LLC twice as a defendant and has alleged that it is both a Florida and Tennessee limited liability company.  However, 48 States is not a Tennessee limited liability company.  It is organized under the laws of the state of Florida.  48 States is registered in Tennessee as a foreign limited liability company.  *See* Ex. "A".

## STATEMENT OF THE CASE

1.     On or about December 17, 2021, plaintiff Jon Nichol filed a Complaint in Utah's First Judicial District Court for Rich County styled *Nichol v. 48 States Transport, LLC, et al.,* Case No. 210100040 (the "State Court Action").  A Copy of the Complaint is attached hereto as Exhibit "B".

2.     Undersigned counsel received a courtesy copy of plaintiff's complaint via email on January 5, 2022.  A copy of this email is attached hereto as Exhibit "C".  Defendants have not been formally served with a complaint and summons.

3.     The complaint purports to assert causes of action for negligence, negligence per se, negligent entrustment and vicarious liability.  Plaintiff's claims arise from allegations that defendant Saint Julien negligently operated his vehicle and caused an accident which resulted in injury to plaintiff.

4.     The relief plaintiff seeks includes compensatory damages in excess of $300,000. *See* Ex. "B" at ¶ 45.

## DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)

5.     This Court has jurisdiction over this matter under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between plaintiff and defendants 48 States and Saint Julien

6.     Plaintiff alleges that he is a resident of Rich County, Utah. Plaintiff is therefore a citizen of the state of Utah for purposes of diversity jurisdiction.  *See State Farm Mut. Auto Ins. Co., v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994) ("[T]he place of residence is *prima facie* [evidence of] the domicile.").

7.      Defendant Saint Julien is not a citizen of Utah.  As alleged in plaintiff's complaint, Estrada is a resident of Florida.  Defendant Saint Julien is therefore a citizen of the state of Florida for purposes of diversity jurisdiction.  *Id.*

8.      As alleged in plaintiff's complaint, 48 States is a limited liability company organized under the laws of the state of Florida.   It is believed that all members of 48 States reside in the state of Florida.  Therefore, since the diversity jurisdiction of a limited liability company depends on the citizenship of its members, 48 States is a citizen of the state of Florida for purposes of diversity jurisdiction.

9.      Removal of this action is timely under 28 U.S.C. § 1446(b), as less than thirty-days has elapsed since the defendants received a copy of the Complaint.

10.     Written notice of this removal is being served this date on counsel for the plaintiff.

11.     A true and correct copy of this notice is being filed this date with the Clerk of the Third Judicial District Court, Salt Lake County, State of Utah.

12.      As mentioned above, a copy of the complaint is attached hereto as Exhibit "B".  A copy of the email evidencing defendant's receipt of the complaint attached hereto as Exhibit "C".

13.     Based on the foregoing, the defendants hereby remove the action against them from the First Judicial District Court in and for Rich County, State of Utah, to the United States District Court for the District of Utah, Northern Division.

DATED this 2nd day of February 2022.

**RESNICK & LOUIS, PC**

By:/s/ *Gary R. Guelker*
   GARY R. GUELKER
   *Attorneys for Defendants*

3

# EXHIBIT A



**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

# Filing Information

Name:   **48 STATES TRANSPORT LLC**

## General Information

| | | | |
|---|---|---|---|
| **SOS Control #** | **001190639** | Formation Locale: | FLORIDA |
| Filing Type: | Limited Liability Company - Foreign | Date Formed: | 09/14/2010 |
| | 04/16/2021 12:12 PM | Fiscal Year Close | 12 |
| Status: | Active | Member Count: | 2 |
| Duration Term: | Perpetual | | |
| Managed By: | Member Managed | | |

**Registered Agent Address**
CAPITAL FILING SERVICE, INC.
STE B
992 DAVIDSON DR
NASHVILLE, TN  37205-1051

**Principal Address**
1523 HIGHWAY 70 W
CAMDEN, TN  38320-4724

The following document(s) was/were filed in this office on the date(s) indicated below:

| Date Filed | Filing Description | Image # |
|---|---|---|
| 04/16/2021 | Initial Filing | B1020-9686 |

Record Status Changed  From: Pending Review  To: Active

| **Active Assumed Names (if any)** | **Date** | **Expires** |
|---|---|---|

# EXHIBIT B

ROBERT W. HUGHES #1573
Attorney for Plaintiff
438 East 200 South
Salt Lake City, Utah 84111
Telephone: (801) 364-9075
rwhughes@rhughesattorney.com

---

### IN THE FIRST JUDICIAL DISTRICT COURT IN AND FOR THE

### COUNTY OF RICH, STATE OF UTAH

| | |
|---|---|
| JON D. NICHOL,<br><br>                          Plaintiff,<br><br>       vs.<br><br>48 STATES TRANSPORT, LLC, a Florida limited liability company; 48 STATES TRANSPORT, LLC, a Tennessee limited liability company; JEFFREY SAINT JULIEN; and JOHN DOES 1-10,<br><br>                          Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Civil No. 210100040<br><br>Judge Angela Fonnesbeck |

Plaintiff, by and through his attorney, hereby complains and alleges against Defendants as follows:

### PARTIES

1.      Plaintiff is a resident of Rich County, State of Utah.

2.      Defendant, 48 States Transport, LLC ("48 States Transport FL") is a Florida limited liability company.

3.      Defendant, 48 States Transport, LLC ("48 States Transport TN") is a Tennessee limited liability company.

4.      Defendant, Jeffrey Saint Julien, ("Saint Julien") is a resident of the State of Florida.

1

ROBERT W. HUGHES #1573
Attorney for Plaintiff
438 East 200 South
Salt Lake City, Utah 84111
Telephone: (801) 364-9075
rwhughes@rhughesattorney.com

---

**IN THE FIRST JUDICIAL DISTRICT COURT IN AND FOR THE**

**COUNTY OF RICH, STATE OF UTAH**

---

| | |
|---|---|
| JON D. NICHOL,<br><br>              Plaintiff,<br><br>vs.<br><br>48 STATES TRANSPORT, LLC, a Florida limited liability company; 48 STATES TRANSPORT, LLC, a Tennessee limited liability company; JEFFREY SAINT JULIEN; and JOHN DOES 1-10,<br><br>              Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Civil No. _____<br><br>Judge _____ |

Plaintiff, by and through his attorney, hereby complains and alleges against Defendants as follows:

### PARTIES

1.      Plaintiff is a resident of Rich County, State of Utah.

2.      Defendant, 48 States Transport, LLC ("48 States Transport FL") is a Florida limited liability company.

3.      Defendant, 48 States Transport, LLC ("48 States Transport TN") is a Tennessee limited liability company.

4.      Defendant, Jeffrey Saint Julien, ("Saint Julien") is a resident of the State of Florida.

1

5. Defendants, John Does 1-10 ("Does") are persons or entities who may have participated in or have knowledge of the acts alleged herein.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to Utah Code Ann. §78A-5-102.

7. Venue properly lies in this Court pursuant to Utah Code Ann. §78B-3-307.

8. Defendants 48 States Transport FL and 48 States Transport TN are foreign limited liability companies. However, at all times relevant hereto, said Defendants were doing business in Rich County, State of Utah, and caused injury to Plaintiff in Rich County, State of Utah, and therefore jurisdiction pursuant to Utah Code Ann. §78B-3-205 is appropriate.

9. By reason of the foregoing, Defendants 48 States Transport FL and 48 States Transport TN are subject to jurisdiction in Rich County, State of Utah even though said Defendants maybe nonresidents of the State of Utah.

10. Defendant Saint Julien is a resident of the State of Florida. However at all times relevant hereto, Defendant Saint Julien was doing business in Rich County, State of Utah, and caused injury to Plaintiff in Rich County, State of Utah, and therefore jurisdiction pursuant to Utah Code Ann. §78B-3-205 is appropriate.

11. By reason of the foregoing, Defendant Saint Julien is subject to jurisdiction in Rich County, State of Utah even though said Defendant may be a nonresident of the State of Utah.

## FACTS

12. Plaintiff incorporates by this reference paragraphs 1 through 11 above as though fully set forth below.

2

13.     Plaintiff is a Deputy with the Rich County Sheriff's Department, and all times relevant hereto was a Deputy with the Rich County Sheriff's Department.

14.     On February 5, 2019, at approximately 10:30 a.m., Plaintiff was standing outside his police vehicle to slow traffic approaching a vehicle accident which had occurred in Laketown Canyon, Rich County, Utah (the "Accident Site").

15.     A semi-truck pulling a trailer, owned by Defendant 48 States Transport FL and/or Defendant 48 States Transport TN, and driven by Defendant Saint Julien, (the "Semi-Truck") approached the Accident Site.

16.     On February 5, 2019, the Semi-Truck, owned and operated by Defendants, was traveling on the highway which has a down grade and was partially snow-covered, at a speed estimated to be over 50 mph.

17.     Defendants were operating the Semi-Truck at a speed too fast for the conditions and in a dangerous fashion without regard to weather conditions or the flow of traffic on the road way.

18.     Defendant Saint Julien did not maintain control of the Semi-Truck and, upon arriving at the Accident Site where Plaintiff was directing traffic, lost control of the Semi-Truck.

19.     The Semi-Truck, since it was out of control, left the road way and appeared to head toward the truck ramp designated for run away or out of control vehicles.

20.     When the Semi-Truck left the road way, it struck Plaintiff and continued into a snow bank (the "Accident").

21.     Immediately following the Accident, Plaintiff had blood coming from his face and head in several locations, was confused/disoriented, and had other visible injuries.  Copies of the

3

Utah Highway Patrol Report and Department of Natural Resources Parks and Recreation Officer Report are attached hereto as Exhibit 1.

22.     Upon impact, Plaintiff immediately felt pain in his head, neck, back, arms, and legs.

23.     Plaintiff was treated at the scene and transported by emergency ambulance to Logan Regional Hospital for medical treatment.

24.     Immediately following the Accident, Defendant Saint Julien informed Officer Cade Brenchley that he had stayed in Wyoming the previous night and upon preparing to the leave the morning of February 5, 2019 in the storm, he contacted Defendant 48 States Transport FL and/or Defendant 48 States Transport TN and inquired whether he could remain in Wyoming until the storm passed.

25.     Defendant Saint Julien did not want to drive in the winter conditions, but he was told by Defendant 48 States Transport FL and/or Defendant 48 States Transport TN that he could not stay in Wyoming and that he must continue on his route.

26.     Prior to the Accident, Defendant Saint Julien had not driven the Semi-Truck, or any other semi-truck, in the snow on his own.

27.     The route which Defendant Saint Julien was instructed to take was a route with tight curves and steep declines.

28.     There were other routes available to Defendant Saint Julien to take to his destination which were safer and had better road conditions in a snow storm.

29.     As a result of the Accident, Plaintiff suffered severe injuries including, but not limited to the following:

(a)     Upon arrival at Logan Regional Hospital, Plaintiff's several bruises and lacerations were examined and he received the following x-rays and CT scans:

> CT Brain/Head w/o Contrast
> CT Spine Cervical w/o Contrast
> CT Spine Lumbar w/o Contrast
> CT Spine Thoracic w/o Contrast
> XR Pelvis 1 or 2 Views
> XR Tibia/Fibula Left
> XR Tibia/Fibula Right
> XR Chest 1 View Frontal
> XR Forearm 2 Views Left
> XR Forearm 2 Views Right
> XR Hand 2 Views Left
> XR Hand 2 Views Right
> XR Humerus Right
> XR Elbow 2 Views Right
> CT Abdomen and Pelvis w/Contrast
> XR Femur 2 Views Left
> XR Femur 2 Views Right

(b)     As a direct and proximate result of the Accident, Plaintiff suffered a traumatic laceration to the triceps tendon in his right elbow, which required surgery, follow up medical treatment, and physical therapy.

(c)     As a direct and proximate result of the Accident, Plaintiff suffered a right rotator cuff tear, which required surgery, follow up medical treatment, and physical therapy.

(d)     As a direct and proximate result of the Accident, Plaintiff suffered a nonangulated fracture through the left mid fibular shaft with adjoining bony and soft tissue edema, which required medical treatment and physical therapy.

(e)     As a direct and proximate result of the Accident, Plaintiff suffered significant edema in his right thigh, which required medical treatment and physical therapy.

(f)     As a direct and proximate result of the Accident, Plaintiff has had continued weakness in his legs, affecting his gait, his ability to sit for long periods of time, and his ability to maintain his balance on uneven or slippery surfaces.

(g)     As a direct and proximate result of the Accident, Plaintiff suffered an anterior left shoulder injury affecting his ability to lift and extend his left arm, which required medical treatment and physical therapy.

(h)     As a direct and proximate result of the Accident, Plaintiff suffered headaches which required medical treatment.

(i)     As a direct and proximate result of the Accident, Plaintiff suffered injuries to his left thumb which required medical treatment.

(j)     As a direct and proximate result of the Accident, Plaintiff suffered injuries to his hand/fingers which required surgery, follow up medical treatment, and physical therapy.

30.     The pain and physical limitations suffered by Plaintiff in the Accident have affected his state of mind and have caused Plaintiff to become frustrated, irritated, depressed, and angry which have adversely affected Plaintiff's relationships with family, co-workers, and friends and have adversely affected his ability to perform his duties as a police officer and caused Plaintiff to investigate early retirement.

31.     As a result of the injuries suffered by Plaintiff in the Accident, Plaintiff has greatly diminished and deteriorating physical conditions which have caused anxiety and depression which have required medical treatment, have adversely affected Plaintiff's relationships with family, co-workers, and friends, adversely affected Plaintiff's ability to perform his duties as a police officer, and caused Plaintiff to investigate early retirement.

6

32.     As a result of the injuries suffered by Plaintiff in the Accident, Plaintiff has greatly diminished and deteriorating physical conditions which have adversely affected his ability to engage in his normal and usual activities including sports, outdoor activities, wood working, and performing his duties as a police officer.

33.     As a result of the injuries suffered by Plaintiff in the Accident, Plaintiff has received medical surgeries and treatments to correct damage caused to his body which have added to the pain and anxiety suffered by Plaintiff following the Accident.

34.     As a result of the Accident, Plaintiff has incurred medical costs in an amount in excess of $110,170.00, and which are ongoing, in an amount to be proven at trial.

35.     Plaintiff will continue to incur medical costs to treat the injuries sustained as a result of the Accident throughout his life in an amount to be proven at trial.

36.     At the time of the Accident, Plaintiff owned a home in Garden City, Utah, a resort town on the shores of Bear Lake in Rich County, Utah.

37.     Plaintiff, a skilled carpenter, intended to finish the home and rent his home during peak tourist season to supplement his income.

38.     As a result of the Accident, Plaintiff has been unable to fully complete his home so that it can be used as a rental.

39.     Had Plaintiff been able to complete his home as he planned, he could have enjoyed additional income of approximately $151,080.00 during the years 2019 through 2021, plus approximately $63,140.00 per year thereafter.

40.     Plaintiff is unable to estimate when his physical injuries caused by the Accident will allow him to finish his home.

7

41.     As a result of the Accident, Plaintiff has incurred and will incur future lost wages and benefits because of potential early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff in an amount to be proven at trial.

### FIRST CAUSE OF ACTION
### (FAILURE TO EXERCISE REASONABLE CARE)

42.     Plaintiff realleges the allegations contained in paragraphs 1 through 41 above as though fully set forth below.

43.     In operating the Semi-Truck, Defendant Saint Julien did not have due regard to the existing conditions or to the safety of Plaintiff.

44.     As a result of Defendant Saint Julien's failure to exercise reasonable care, Defendant Saint Julien caused the Accident described above resulting in Plaintiff sustaining severe and serious personal injuries and damages.

45.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages in an amount in excess of $1,000,000.00.

46.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

## SECOND CAUSE OF ACTION
### (FAILURE TO KEEP VEHICLE UNDER CONTROL)

47.     Plaintiff realleges the allegations contained in paragraphs 1 through 46 above as though fully set forth below.

48.     Defendant Saint Julien failed to operate the Semi-Truck under his control in a safe or proper manner at the time and place which is the subject of this Complaint.

49.     As a result of Defendant Saint Julien's failure to keep the Semi-Truck under control, the Semi-Truck which Defendant Saint Julien was operating caused the Accident described above resulting in Plaintiff suffering severe and painful personal injuries.

50.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages in an amount in excess of $1,000,000.00.

51.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

## THIRD CAUSE OF ACTION
### (VIOLATION OF UTAH CODE)

52.     Plaintiff realleges the allegations contained in paragraphs 1 through 51 above as though fully set forth below.

53.     Defendants were negligent in operating the Semi-Truck at the time and place as

9

alleged herein above in violation of the rules of the road and statutes and ordinances of the State of Utah.

54.     Defendants operated the Semi-Truck in a willful and wanton fashion and in total disregard of the safety of other persons or property.

55.     <u>Utah Code Ann.</u> §41-6a-528 provides, in relevant part:

> A person is guilty of reckless driving who operates a vehicle:
> (a) in willful or wanton disregard for the safety of persons or property;

56.     Defendant Saint Julien, individually and as an agent of Defendant 48 States Transport FL and/or Defendant 48 States Transport TN, operated the Semi-Truck in such a manner that it demonstrated a willful and wanton disregard for the safety of Plaintiff.

57.     Defendant Saint Julien, individually and as an agent of Defendant 48 States Transport FL and/or Defendant 48 States Transport TN, operated the Semi-Truck in a reckless manner and in violation of <u>Utah Code Ann.</u> §41-6a-528 which clearly demonstrates that Defendants' operation of the Semi-Truck at the time and place relevant hereto was per se reckless

58.     Defendant Saint Julien were negligent in operating the Semi-Truck at the time the Semi-Truck  struck Plaintiff.

59.     By reason of Defendant Saint Julien's negligence, Plaintiff was injured and sustained the damages described above.

60.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement,

physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

61.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

## FOURTH CAUSE OF ACTION
### (NEGLIGENT ENTRUSTMENT)

62.     Plaintiff realleges the allegations contained in paragraphs 1 through 61 above as though fully set forth below.

63.     Defendants 48 States Transport FL and/or 48 States Transport TN was/were negligent in allowing Defendant Saint Julien to drive the Semi-Truck on the day of the Accident.

64.     Defendants 48 States Transport FL and/or 48 States Transport TN is/are responsible for the harm to Plaintiff based upon the following:

(a)     Defendants 48 States Transport FL and/or 48 States Transport TN employed and/or contracted with Defendant Saint Julien to operate the Semi-Truck driven by Defendant Saint Julien at the time of the Accident.

(b)     Defendants 48 States Transport FL and/or 48 States Transport TN permitted Defendant Saint Julien to drive the Semi-Truck.

(c)     Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien as to the route Defendant Saint Julien was to travel on February 5, 2019.

(d)     Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien as to the time Defendant Saint Julien was to travel on February 5, 2019.

65.     At the time Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien to drive the Semi-Truck on February 5, 2019, Defendants 48 States Transport FL and/or 48 States Transport TN knew, or should have known, that Defendant Saint Julien was a careless, reckless, and inexperienced driver.

66.     Defendants 48 States Transport FL and/or 48 States Transport TN was/were negligent in allowing Defendant Saint Julien to drive the Semi-Truck on February 5, 2019.

67.     Defendants 48 States Transport FL and/or 48 States Transport TN's, negligence caused the Accident which is the subject of this Complaint.

68.     By reason of Defendants 48 States Transport FL and/or 48 States Transport TN's negligence, Plaintiff was injured and sustained the damages described above.

69.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

70.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

## FIFTH CAUSE OF ACTION
(UNSAFE ROUTE)

71.    Plaintiff realleges the allegations contained in paragraph 1 through 70 above as though fully set forth below.

72.    On the morning of February 5, 2019, Defendant Saint Julien was in Evanston, Wyoming.

73.    As Defendant Saint Julien was preparing to depart Evanston, Wyoming on the morning of February 5, 2019, Defendant Saint Julien contacted Defendant 48 States Transport FL and/or 48 States Transport TN and informed said Defendants of the current weather conditions in Evanston, Wyoming.

74.    Defendant Saint Julien requested that he be allowed to remain in Evanston, Wyoming until the snow storm passed and the roads had been cleared.

75.    Defendants Saint Julien was instructed by Defendants 48 States Transport FL and/or 48 States Transport TN to "get on the road" so that the load he was carrying could be delivered timely.

76.    Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien to drive the Semi-Truck west out of Evanston, Wyoming along SR-30 down Laketown Canyon in Rich County, Utah.

77.    Defendants 48 States Transport FL and/or 48 States Transport TN could have instructed Defendant Saint Julien to proceed west on I-80, a larger and better maintained highway, rather down the narrow and steeper SR-30 route down Laketown Canyon.

13

78.     Defendants 48 States Transport FL and/or 48 States Transport TN was/were negligent in instructing Defendant Saint Julien to drive the Semi-Truck down the steeper SR-30 Laketown Canyon rather than instructing Defendant Saint Julien to travel on I-80.

79.     Defendants 48 States Transport FL and/or 48 States Transport TN's, negligence caused the Accident which is the subject of this Complaint.

80.     By reason of Defendants 48 States Transport FL and/or 48 States Transport TN's negligence, Plaintiff was injured and sustained the damages described above.

81.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

82.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that the Defendants' conduct was egregious and reprehensible.

### SIXTH CAUSE OF ACTION
(SUDDEN PERIL)

83.     Plaintiff incorporates by this reference paragraphs 1 through 82 above as though fully set forth below.

84.     Immediately prior to the Accident, Plaintiff was faced with imminent danger when Defendant Saint Julien lost control of the Semi-Truck and the Semi-Truck left SR-30 at the Accident Site.

85.     Plaintiff was struck by the Semi-Truck as he attempted to move out of the way of the Semi-Truck.

86.     Plaintiff was faced with sudden peril and acted accordingly in attempting to run out of the pathway of the Semi-Truck.

87.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

88.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     Judgment against Defendants in an amount to be proven at trial for the pain and mental anguish endured by Plaintiff as a result of the Accident.

2.     Judgment against Defendants in an amount to be proven at trial for the medical care and treatment Plaintiff has a received as a result of the Accident.

15

3.      Judgment against Defendants in an amount to be proven at trial for the future medical expenses for Plaintiff for the injuries sustained as a result of the Accident.

4.      Judgment against Defendants in an amount to be proven at trial for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff as a result of the Accident.

5.      Judgment against Defendants in an amount to be proven at trial for Plaintiff's income and revenue from the completion and rental of his mountain home.

6.      For compensatory damages in the maximum amount allowed under Utah law.

7.      For punitive damages in the maximum amount allowed under Utah law on the basis that Defendants' conduct was egregious and reprehensible.

8.      For Plaintiff's costs and attorney's fees incurred in prosecuting this action.

9.      For such other and further relief as the Court deems just and equitable in the premises.

## JURY DEMAND

Pursuant to Rule 38 of the Utah Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all triable issues.

DATED this 17th day of December, 2021.


                                        _____ */s/ Robert W. Hughes*_____
                                        ROBERT W. HUGHES
                                        Attorney for Plaintiff

# EXHIBIT

## "1"

# UTAH HIGHWAY PATROL
## OFFICER REPORT
**Incident: U12201505**

**Report: R15182069**

**Page: 1 of 2**

**Case: 0119R0115**

**O**

## DETAILS

**Activity Codes: 701-At Scene of Crash (Crash Not Cleared)**
Location: MO-30 westbound near milepost 121 Laketown
**Case Disposition: Citation**
Occurred on: **02/05/2019** From: **10:32** To: **14:00**
Officer Activity on: **02/05/2019** At: **10:32**
Officer Activity to: **02/07/2019** At: **10:38**

## PEOPLE INVOLVED

**Name: NICHOL, JON DAVIES**

| | | | |
|---|---|---|---|
| Age at Incident: 57 | DOB: 07/07/1961 | Race: White | Mobile: (435) 881-7125 |
| Ethnicity: non Hispanic | Hair: Brown | Ht: 5' 11" | |
| Sex: Male | Eyes: Green | Wt: 210 lbs. | |

Residence Addr: 3118 S COUNTRY CLUB GARDEN CITY, UT 84028

**Name: SAINT JULIEN, JEFFREY**

| | | | |
|---|---|---|---|
| Age at Incident: 31 | DOB: 03/23/1987 | Race: Black | Mobile: (407) 749-6420 |
| Ethnicity: Hispanic | Hair: Black | Ht: 5' 10" | |
| Sex: Male | Eyes: | Wt: | |

Residence Addr: 18725 NW 10th Ct Miami, FL 33169

**Name: DATTAGE, ELDEN CHECKETTS**

| | | |
|---|---|---|
| Age at Incident: 73 | DOB: 08/06/1945 | Race: White |
| Ethnicity: non Hispanic | Hair: Gray or Partially Gray | Ht: 5' 8" |
| Sex: Male | Eyes: Hazel | Wt: 230 lbs. |

Residence Addr: 276 E CENTER PROVIDENCE, UT 84332

**Name: ROSKELLEY, DANIEL JON**

| | | | |
|---|---|---|---|
| Age at Incident: 40 | DOB: 03/08/1978 | Race: White | Mobile: (435) 994-1871 |
| Ethnicity: non Hispanic | Hair: Brown | Ht: 5' 8" | |
| Sex: Male | Eyes: Hazel | Wt: 150 lbs. | |

Residence Addr: 3253 S CHUKAR DR GARDEN CITY, UT 84028

## VEHICLE DETAILS

| Owner | Plate/Decal | Expires | VIN | Make | Model | Style | Year | Color |
|---|---|---|---|---|---|---|---|---|
| | (FL) JA96HP | 2020-01-31 | 4V4NC9EHXGN945832 | Volvo | TT | Tractor Truck, Diesel. | 2016 | |

## NARRATIVE

Synopsis: I investigated a crash involving a Rich County deputy who was struck by a semi while outside his vehicle, conducting traffic control.

Details:

1. On Tuesday, February 5, 2019 at approximately 1032 hours, I was on duty in Cache County when I was advised of an injury crash in Rich County in Laketown Canyon on SR-30, near milepost 121. I responded from Cache County and arrived at the mouth of Laketown Canyon at 1155 hours. There was a prior crash at the same location, so that investigating trooper (Josh Preece) was helping with my investigation prior to my arrival. Once I arrived, I remained at the mouth of the canyon to close the canyon to traffic. I was advised that Deputy Jon Nichol was standing outside his vehicle with Officer Dan Roskelley in order to slow traffic down for a crash. They were on a sharp corner where a runaway truck ramp is located. At approximately 1032 hours, a semi truck pulling a trailer was approaching their location, eastbound. The semi truck was coming down the grade on the partially snow-covered road at a speed too fast for the conditions. The semi could not maintain control on the slick road and upon arriving to the curve in the road, failed to take the runaway truck ramp. The semi drove to the left of the runaway truck ramp, striking a snowbank and Deputy Nichol as he tried to run out of the path of the semi. The semi continued up the embankment before striking a rock outcropping.

2. The driver, Jeffrey Saint Julien, and Deputy Nichol were treated at the scene before being transported to Logan Regional Hospital. This all occurred prior to my arrival. Once I gathered all this information and the semis from both crashes were cleared, I responded to Logan Regional Hospital. Once there, I spoke with Saint Julien, who had some bumps and bruises. Prior to talking with him, one of the EMS individuals told me that Saint Julien stated that he did not want to drive in these conditions, but his boss told him he had to. When I spoke with him, he told me that he crested the hill near the brake check area where the speed limit changes from 65 to 50 and he could not slow down. He said the roads were slick and his truck was sliding down the hill. He attempted to brake and steer the semi so it would remain on the road. When he arrived at the curve he could not control the semi at all and ran straight off the road and into the snow.

# O

# UTAH HIGHWAY PATROL
## OFFICER REPORT
### Incident: U12201505
### Report: R15182069

**Page: 2 of 2**
**Case: 0119R0115**

## NARRATIVE

3. When Saint Julien was released from the hospital, I transported him to a local hotel where his company had reserved him a room. While speaking with Saint Julien, I asked him about his trip and his conversation with his company that morning. He advised that he stayed in a truck stop in Wyoming the night before and upon preparing to leave in the storm, he contacted his company to ask if he could stay and wait out the storm. He alleges that he was told he could not and that he had to continue. He then stated that he was given alternate directions that took him off I-80 and eventually onto SR-30 in Utah that would take him to I-15. That was his reason for taking that route. Originally he said the route left him on I-80 until he reached I-84 westbound and on to I-15. He also stated that this trip was his first in snow while on his own.

4. I dropped Saint Julien off at a Comfort Inn in Logan. He still had not retrieved his belongings from the semi as it had severe damage with limited accessibility. Later in the day, I obtained some clothing for Saint Julien and brought them to his hotel room. I was also in contact with Anna, an employee with the trucking company, 48 State Transport. They were arranging to fly Saint Julien home in the next couple of days. I was also advised of video footage in the truck that was inaccessible wirelessly because the truck had entered an area without cellular coverage and was now without power. I was told I would need to retrieve a black piece of equipment from the truck. I responded to the semi truck at Elden Dattage Towing to retrieve Saint Julien's personal belongings and the video box. I eventually did both the next day and gave the items to Saint Julien at his hotel room.

5. I visited Deputy Nichol at the hospital to find out what happened and what his injuries were. He advised me that when he was the semi approaching, it was hard to tell where it was going to end up going. He said it appeared that it was trying to turn to its left, so Deputy Nichol changed his first direction and ran to the right of the semi when it struck the snowbank he was on, while Officer Roskelley and Elden Dattage (tow driver) watched. Both Roskelley and Dattage ran to provide aid to Nichol and eventually Saint Julien. Trooper Preece also responded to provide aid and begin investigation after contacting me. Trooper Travis Mouritsen also arrived to perform a CVSA inspection on the semi. Nichol had abrasions and lacerations on his face and arms. He also had a fracture in one of his arms, but stated his legs were not broken as originally reported.

6. On Thursday, February 7, 2020, I transported Saint Julien from his hotel to an airport shuttle to take him to the Salt Lake International Airport. At that point, the only thing I did not have to complete my investigation was the video off the in-car camera from the semi. Saint Julien was cited for speed too fast for conditions.

End report.

7. I received a copy of the video from 48 State Transport via Trooper Mouritsen a few days after the crash. The video shows the semi going over the centerline and back a few times as it tries to regain control and slow down. The semi then fails to make the curve and runs off the road, striking Nichol as it hits a snowbank.

Video Evidence - Other.
Video Evidence Explaination - semi dash camera.

## REPORTING OFFICER

| Officer's Name | Badge | Signature | Printed On |
|---|---|---|---|
| Brenchley, Cade | 216 | | 01/16/2020 At: 15:41 |

## ASSISTING OFFICERS

| Agency | Officer's Name | Badge |
|---|---|---|
| Utah Highway Patrol | Preece, Joshua | 280 |
| Utah Highway Patrol | Mouritsen, Travis | 191 |

## SUPERVISOR

| Agency | Officer's Name | Badge |
|---|---|---|
| Utah Highway Patrol | Perry, Lee | |

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION

## OFFICER REPORT

**Incident: I18078208**

**Report: R139788**

**Page: 1 of 3**

**Case: 2019-000190**

## DETAILS

Activity AA.PARK-Agency / Officer Assist, GN.PARK-General Contact
Codes:
Location: MO-SR 30  Laketown Canyon  Laketown
Case Inactive
Disposition:
Occurred on: 02/05/2019 From: 08:35 To: 13:00
Officer 02/05/2019 From: 08:45 To: 12:05
Activity on:

## ORGANIZATIONS INVOLVED

IO   Name: Rich County Sheriff's Office
Addr:
Involvement: Involved-Other

## NARRATIVE

**REQUEST FOR ASSISTANCE**

Deputy Wahlberg (1E-4) asked me to assist with traffic on a semi crash in Laketown Canyon. I was at Dee's in Laketown at the time and I told him I would be en-route.

**TRAFFIC CONTROL**

I arrived at 0848 hours and was asked to slow traffic coming down canyon (westbound) and at times, to stop traffic for road prep by UDOT or wrecker operations. At about 1020 hours, I was told it was not necessary to stay in my position up the canyon any longer with the improved road conditions so I responded to the truck ramp area where Deputy Nichols (1E-2) was parked. Traffic was still being allowed to pass so we continued to encourage a safe speed by passing motorists.

**SECONDARY CRASH**

At around 1030 hours 1E-2 and I noticed a semi-truck with trailer round a corner up canyon from us at a high rate of speed, unable to maintain a lane of travel. At the same time one of the wreckers below us was driving up canyon slowly to reposition. Out of concern that the semi driver may try to round the corner, possibly out of control, I waved at the wrecker operator to stop/get out of the way as possible as the approaching semi was out of his view.

Where 1E-2 and I were standing, our options for escape were dependent on which direction the semi operator tried for at the last couple of seconds rendering us essentially out of options. I do not recall hearing a horn or any warning from the approaching semi and we quickly determined it was out of control. As the semi neared and was within thirty to forty yards, it appeared he may be headed for the runaway truck ramp but may not have seen it soon enough (it was snow covered). 1E-2 had begun to run in the direction of the runaway truck ramp, disappeared in the cloud of snow and appeared to be in the path of the semi as it plowed through the large snow bank in between the ramp and our patrol vehicles. The semi appeared to be traveling at a speed of at least 50 miles per hour as it impacted the snow bank and 1E-2.

**MEDICAL**

---

Department of Natural Resources Parks and Recreation
1594 West North Temple suite 116 Salt Lake City, Utah 84114

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION

**O**

### OFFICER REPORT

**Incident: I18078208**          **Page: 2 of 3**

**Report: R139788**          **Case: 2019-000190**

## NARRATIVE

After the snow cloud settled, I yelled for 1E-2, then noticed him rolling himself out of the path that the semi had made. He had minor blood coming from his face and head in several locations and when I spoke to him, he was confused/disoriented. I called for an ambulance and performed a rapid scan of his person with no other obvious signs of deformity or excessive bleeding. 1E-2 was conscious and breathing. I called for a second ambulance for the truck driver whom I soon heard moaning from up on the hillside. Medical was on scene within a few minutes and took over care of 1E-2 and transported him by ambulance to a hospital in the Logan area.

I found the semi-truck driver out of the cab and on the snow and rocks in front of his truck in a rocky cliff area. The driver was conscious and breathing but appeared to be in shock as he was not fully alert. After speaking to him for a few moments, I found his primary complaint was left side paralysis/numbness with a contusion on the left side of his head and that he was a thirty-one year old male. The driver told me he had climbed out of his truck cab after the impact fearing that it was going to catch fire. There was a smell of fuel around us and I could see fuel leaking from the wreckage below us. The driver was still very concerned about the risk of fire so I helped him as he moved a few more yards away from the wreckage. The driver was placed on a backboard after some medical personnel hiked up the hill and I helped carry him down the hill and to another ambulance. The last ambulance left the scene at around 1100 hours, en-route to Logan.

CONCLUSION

I met with Deputy Johnson (1E-3), Troopers that had arrived and UDOT crew as I remained on scene for a while. I cleared from the incident at 1205 hours and spent some time meeting with Ranger Droesbeke in Laketown.

## REPORTING OFFICER

| Officer's Name | Badge | Signature | Printed On |
| --- | --- | --- | --- |
| Roskelley, Daniel | 270 | | **03/13/2021** At: **11:25** |

## ASSISTING OFFICERS

| Agency | | Officer's Name | Badge |
| --- | --- | --- | --- |
| Department of Natural Resources Parks and Recreation | | Droesbeke, Richard | 198 |
| Rich County Sheriff's Office | | Wahlberg, Tom | 1E-4 |
| Case: | Incident: 2019-0114 | Report: | |
| Rich County Sheriff's Office | | Nichols, Jon | 1E-2 |
| Case: | Incident: 2019-0115 | Report: | |
| Rich County Sheriff's Office | | Johnson, Jared | 1E-3 |
| Case: | Incident: 2019-0115 | Report: | |
| UHP | | Reese | 280 |
| Case: | Incident: | Report: | |
| UHP | | Brenchley | 216 |
| Case: | Incident: | Report: | |

Department of Natural Resources Parks and Recreation
1594 West North Temple suite 116 Salt Lake City, Utah 84114

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION

**S**

### SUPPLEMENTAL REPORT

**Incident: I18078208**

**Report: R139795**

**Page: 1 of 1**

**Case: 2019-000190**

## OFFENSES

Activity AA.PARK-Agency / Officer Assist, GN.PARK-General Contact,
Codes:
Location: MP0 on MO-SR 30, Garden City
Case Inactive
Disposition:
Occurred on: 02/05/2019 From: 08:35 To: 13:00
Officer 02/05/2019 From: 08:45 To: 13:00
Activity on:

## NARRATIVE

Jon's injuries include a cut R. thumb, severed tendon in his R. arm, contusions on head, etc. and other deep bruising particularly on his legs. He was discharged from the hospital after only a couple of days. Jon went to the hospital again for an MRI around the first week of March due to increased pain and found his that his R. fibula was broken.

It appears as though a large pile of snow previously pushed up by UDOT plows provided some lift to the the semi & trailer (now estimated as traveling at 60+ MPH) and the ensuing burst of snow/ice pushed Jon to the ground with the semi running him over.

The low quality video footage recently obtained by UHP shows the described events and will be attached.

## REPORTING OFFICER

| Officer's Name | Badge | Signature | Printed On |
|---|---|---|---|
| Roskelley, Daniel | 270 | | 03/13/2021 At: 11:27 |

## SUPERVISOR

| Agency | Officer's Name | Badge |
|---|---|---|
| Department of Natural Resources Parks and Recreation | Stucki, Eric | 221 |

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION
## OFFICER REPORT
**Incident: I18078208**  **Page: 3 of 3**
**Report: R139788**  **Case: 2019-000190**

## SUPERVISOR

| Agency | Officer's Name | Badge |
|---|---|---|
| Department of Natural Resources Parks and Recreation | Stucki, Eric | 221 |



Department of Natural Resources Parks and Recreation
1594 West North Temple suite 116 Salt Lake City, Utah 84114

# EXHIBIT C

| | |
|---|---|
| **From:** | Jeri Crook |
| **To:** | Gary Guelker |
| **Subject:** | FW: Claim No. WHKN19020017- Jon Nichol |
| **Date:** | Wednesday, January 5, 2022 11:28:49 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image005.png |
| | accpt of service (atty).pdf |
| | Complaint.pdf |
| | summons (FL)(2).pdf |
| | summons (Saint Julien).pdf |
| | summons (TN)(2).pdf |

Gary:

Thank you.  Either day works, please provide a time convenient for you.

I have attached the Complaint and an Acceptance of Service for your consideration.


*Robert W. Hughes*

*Attorney at Law*
*438 East 200 South*
*Salt Lake City, Utah 84111*
*Telephone:  (801) 364-9075*
*Fax:  (801) 364-9081*
*rwhughes@rhughesattorney.com*


(This email and any files transmitted with it are the property of Robert W. Hughes, Attorney at Law, and his affiliates and is solely for the use of the individual or entity to whom this e-mail is addressed. If you are not one of the named recipients or otherwise have reason to believe that you have received this message in error, please notify the sender and delete this message immediately from your computer. Any other use, retention, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited.)


**From:** Gary Guelker <gguelker@rlattorneys.com>
**Sent:** Wednesday, January 5, 2022 9:58 AM
**To:** Robert Hughes <rwhughes@rhughesattorney.com>
**Cc:** Jeri Crook <jeri@rhughesattorney.com>
**Subject:** RE: Claim No. WHKN19020017- Jon Nichol

Good morning, Bob.  Would have time for a call on this case tomorrow or Friday? I am fairly open both days.  Let me know what works for you.  Thanks.

Gary R. Guelker
Admitted in Utah and Nevada
Salt Lake City Office:  801-960-3655
Las Vegas Office:  702-960-4220

# EXHIBIT A



Tre Hargett
Secretary of State

**Division of Business Services**
**Department of State**
**State of Tennessee**
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

## Filing Information

Name:    48 STATES TRANSPORT LLC

### General Information

| | | | |
|---|---|---|---|
| SOS Control # | 001190639 | Formation Locale: | FLORIDA |
| Filing Type: | Limited Liability Company - Foreign | Date Formed: | 09/14/2010 |
| | 04/16/2021 12:12 PM | Fiscal Year Close | 12 |
| Status: | Active | Member Count: | 2 |
| Duration Term: | Perpetual | | |
| Managed By: | Member Managed | | |

Registered Agent Address
CAPITAL FILING SERVICE, INC.
STE B
992 DAVIDSON DR
NASHVILLE, TN  37205-1051

Principal Address
1523 HIGHWAY 70 W
CAMDEN, TN  38320-4724

The following document(s) was/were filed in this office on the date(s) indicated below:

| Date Filed | Filing Description | Image # |
|---|---|---|
| 04/16/2021 | Initial Filing | B1020-9686 |

Record Status Changed  From: Pending Review  To: Active

| Active Assumed Names (if any) | Date | Expires |
|---|---|---|

# EXHIBIT B

ROBERT W. HUGHES #1573
Attorney for Plaintiff
438 East 200 South
Salt Lake City, Utah 84111
Telephone: (801) 364-9075
rwhughes@rhughesattorney.com

---

### IN THE FIRST JUDICIAL DISTRICT COURT IN AND FOR THE

### COUNTY OF RICH, STATE OF UTAH

| | |
|---|---|
| JON D. NICHOL,<br><br>               Plaintiff,<br><br>vs.<br><br>48 STATES TRANSPORT, LLC, a Florida limited liability company; 48 STATES TRANSPORT, LLC, a Tennessee limited liability company; JEFFREY SAINT JULIEN; and JOHN DOES 1-10,<br><br>               Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Civil No. 210100040<br><br>Judge Angela Fonnesbeck |

Plaintiff, by and through his attorney, hereby complains and alleges against Defendants as follows:

### PARTIES

1.      Plaintiff is a resident of Rich County, State of Utah.

2.      Defendant, 48 States Transport, LLC ("48 States Transport FL") is a Florida limited liability company.

3.      Defendant, 48 States Transport, LLC ("48 States Transport TN") is a Tennessee limited liability company.

4.      Defendant, Jeffrey Saint Julien, ("Saint Julien") is a resident of the State of Florida.

ROBERT W. HUGHES #1573
Attorney for Plaintiff
438 East 200 South
Salt Lake City, Utah 84111
Telephone: (801) 364-9075
rwhughes@rhughesattorney.com

---

## IN THE FIRST JUDICIAL DISTRICT COURT IN AND FOR THE

## COUNTY OF RICH, STATE OF UTAH

| | |
|---|---|
| JON D. NICHOL,<br><br>         Plaintiff,<br><br>     vs.<br><br>48 STATES TRANSPORT, LLC, a Florida limited liability company; 48 STATES TRANSPORT, LLC, a Tennessee limited liability company; JEFFREY SAINT JULIEN; and JOHN DOES 1-10,<br><br>         Defendants. | **COMPLAINT AND JURY  DEMAND**<br><br>Civil No. _____<br><br>Judge _____ |

Plaintiff, by and through his attorney, hereby complains and alleges against Defendants as follows:

### PARTIES

1.     Plaintiff is a resident of Rich County, State of Utah.

2.     Defendant, 48 States Transport, LLC ("48 States Transport FL") is a Florida limited liability company.

3.     Defendant, 48 States Transport, LLC ("48 States Transport TN") is a Tennessee limited liability company.

4.     Defendant, Jeffrey Saint Julien, ("Saint Julien") is a resident of the State of Florida.

1

5.      Defendants, John Does 1-10 ("Does") are persons or entities who may have participated in or have knowledge of the acts alleged herein.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to Utah Code Ann. §78A-5-102.

7.      Venue properly lies in this Court pursuant to Utah Code Ann. §78B-3-307.

8.      Defendants 48 States Transport FL and 48 States Transport TN are foreign limited liability companies.  However, at all times relevant hereto, said Defendants were doing business in Rich County, State of Utah, and caused injury to Plaintiff in Rich County, State of Utah, and therefore jurisdiction pursuant to Utah Code Ann. §78B-3-205 is appropriate.

9.      By reason of the foregoing, Defendants 48 States Transport FL and 48 States Transport TN are subject to jurisdiction in Rich County, State of Utah even though said Defendants maybe nonresidents of the State of Utah.

10.     Defendant Saint Julien is a resident of the State of Florida.  However at all times relevant hereto, Defendant Saint Julien was doing business in Rich County, State of Utah, and caused injury to Plaintiff in Rich County, State of Utah, and therefore jurisdiction pursuant to Utah Code Ann. §78B-3-205 is appropriate.

11.     By reason of the foregoing, Defendant Saint Julien is subject to jurisdiction in Rich County, State of Utah even though said Defendant may be a nonresident of the State of Utah.

## FACTS

12.     Plaintiff incorporates by this reference paragraphs 1 through 11 above as though fully set forth below.

2

13.     Plaintiff is a Deputy with the Rich County Sheriff's Department, and all times relevant hereto was a Deputy with the Rich County Sheriff's Department.

14.     On February 5, 2019, at approximately 10:30 a.m., Plaintiff was standing outside his police vehicle to slow traffic approaching a vehicle accident which had occurred in Laketown Canyon, Rich County, Utah (the "Accident Site").

15.     A semi-truck pulling a trailer, owned by Defendant 48 States Transport FL and/or Defendant 48 States Transport TN, and driven by Defendant Saint Julien, (the "Semi-Truck") approached the Accident Site.

16.     On February 5, 2019, the Semi-Truck, owned and operated by Defendants, was traveling on the highway which has a down grade and was partially snow-covered, at a speed estimated to be over 50 mph.

17.     Defendants were operating the Semi-Truck at a speed too fast for the conditions and in a dangerous fashion without regard to weather conditions or the flow of traffic on the road way.

18.     Defendant Saint Julien did not maintain control of the Semi-Truck and, upon arriving at the Accident Site where Plaintiff was directing traffic, lost control of the Semi-Truck.

19.     The Semi-Truck, since it was out of control, left the road way and appeared to head toward the truck ramp designated for run away or out of control vehicles.

20.     When the Semi-Truck left the road way, it struck Plaintiff and continued into a snow bank (the "Accident").

21.     Immediately following the Accident, Plaintiff had blood coming from his face and head in several locations, was confused/disoriented, and had other visible injuries.  Copies of the

3

Utah Highway Patrol Report and Department of Natural Resources Parks and Recreation Officer Report are attached hereto as Exhibit 1.

22.     Upon impact, Plaintiff immediately felt pain in his head, neck, back, arms, and legs.

23.     Plaintiff was treated at the scene and transported by emergency ambulance to Logan Regional Hospital for medical treatment.

24.     Immediately following the Accident, Defendant Saint Julien informed Officer Cade Brenchley that he had stayed in Wyoming the previous night and upon preparing to the leave the morning of February 5, 2019 in the storm, he contacted Defendant 48 States Transport FL and/or Defendant 48 States Transport TN and inquired whether he could remain in Wyoming until the storm passed.

25.     Defendant Saint Julien did not want to drive in the winter conditions, but he was told by Defendant 48 States Transport FL and/or Defendant 48 States Transport TN that he could not stay in Wyoming and that he must continue on his route.

26.     Prior to the Accident, Defendant Saint Julien had not driven the Semi-Truck, or any other semi-truck, in the snow on his own.

27.     The route which Defendant Saint Julien was instructed to take was a route with tight curves and steep declines.

28.     There were other routes available to Defendant Saint Julien to take to his destination which were safer and had better road conditions in a snow storm.

29.     As a result of the Accident, Plaintiff suffered severe injuries including, but not limited to the following:

(a)     Upon arrival at Logan Regional Hospital, Plaintiff's several bruises and lacerations were examined and he received the following x-rays and CT scans:

> CT Brain/Head w/o Contrast
> CT Spine Cervical w/o Contrast
> CT Spine Lumbar w/o Contrast
> CT Spine Thoracic w/o Contrast
> XR Pelvis 1 or 2 Views
> XR Tibia/Fibula Left
> XR Tibia/Fibula Right
> XR Chest 1 View Frontal
> XR Forearm 2 Views Left
> XR Forearm 2 Views Right
> XR Hand 2 Views Left
> XR Hand 2 Views Right
> XR Humerus Right
> XR Elbow 2 Views Right
> CT Abdomen and Pelvis w/Contrast
> XR Femur 2 Views Left
> XR Femur 2 Views Right

(b)     As a direct and proximate result of the Accident, Plaintiff suffered a traumatic laceration to the triceps tendon in his right elbow, which required surgery, follow up medical treatment, and physical therapy.

(c)     As a direct and proximate result of the Accident, Plaintiff suffered a right rotator cuff tear, which required surgery, follow up medical treatment, and physical therapy.

(d)     As a direct and proximate result of the Accident, Plaintiff suffered a nonangulated fracture through the left mid fibular shaft with adjoining bony and soft tissue edema, which required medical treatment and physical therapy.

(e)     As a direct and proximate result of the Accident, Plaintiff suffered significant edema in his right thigh, which required medical treatment and physical therapy.

(f)     As a direct and proximate result of the Accident, Plaintiff has had continued weakness in his legs, affecting his gait, his ability to sit for long periods of time, and his ability to maintain his balance on uneven or slippery surfaces.

(g)     As a direct and proximate result of the Accident, Plaintiff suffered an anterior left shoulder injury affecting his ability to lift and extend his left arm, which required medical treatment and physical therapy.

(h)     As a direct and proximate result of the Accident, Plaintiff suffered headaches which required medical treatment.

(i)     As a direct and proximate result of the Accident, Plaintiff suffered injuries to his left thumb which required medical treatment.

(j)     As a direct and proximate result of the Accident, Plaintiff suffered injuries to his hand/fingers which required surgery, follow up medical treatment, and physical therapy.

30.     The pain and physical limitations suffered by Plaintiff in the Accident have affected his state of mind and have caused Plaintiff to become frustrated, irritated, depressed, and angry which have adversely affected Plaintiff's relationships with family, co-workers, and friends and have adversely affected his ability to perform his duties as a police officer and caused Plaintiff to investigate early retirement.

31.     As a result of the injuries suffered by Plaintiff in the Accident, Plaintiff has greatly diminished and deteriorating physical conditions which have caused anxiety and depression which have required medical treatment, have adversely affected Plaintiff's relationships with family, co-workers, and friends, adversely affected Plaintiff's ability to perform his duties as a police officer, and caused Plaintiff to investigate early retirement.

6

32.     As a result of the injuries suffered by Plaintiff in the Accident, Plaintiff has greatly diminished and deteriorating physical conditions which have adversely affected his ability to engage in his normal and usual activities including sports, outdoor activities, wood working, and performing his duties as a police officer.

33.     As a result of the injuries suffered by Plaintiff in the Accident, Plaintiff has received medical surgeries and treatments to correct damage caused to his body which have added to the pain and anxiety suffered by Plaintiff following the Accident.

34.     As a result of the Accident, Plaintiff has incurred medical costs in an amount in excess of $110,170.00, and which are ongoing, in an amount to be proven at trial.

35.     Plaintiff will continue to incur medical costs to treat the injuries sustained as a result of the Accident throughout his life in an amount to be proven at trial.

36.     At the time of the Accident, Plaintiff owned a home in Garden City, Utah, a resort town on the shores of Bear Lake in Rich County, Utah.

37.     Plaintiff, a skilled carpenter, intended to finish the home and rent his home during peak tourist season to supplement his income.

38.     As a result of the Accident, Plaintiff has been unable to fully complete his home so that it can be used as a rental.

39.     Had Plaintiff been able to complete his home as he planned, he could have enjoyed additional income of approximately $151,080.00 during the years 2019 through 2021, plus approximately $63,140.00 per year thereafter.

40.     Plaintiff is unable to estimate when his physical injuries caused by the Accident will allow him to finish his home.

7

41.     As a result of the Accident, Plaintiff has incurred and will incur future lost wages and benefits because of potential early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff in an amount to be proven at trial.

### FIRST CAUSE OF ACTION
(FAILURE TO EXERCISE REASONABLE CARE)

42.     Plaintiff realleges the allegations contained in paragraphs 1 through 41 above as though fully set forth below.

43.     In operating the Semi-Truck, Defendant Saint Julien did not have due regard to the existing conditions or to the safety of Plaintiff.

44.     As a result of Defendant Saint Julien's failure to exercise reasonable care, Defendant Saint Julien caused the Accident described above resulting in Plaintiff sustaining severe and serious personal injuries and damages.

45.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages in an amount in excess of $1,000,000.00.

46.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

## SECOND CAUSE OF ACTION
### (FAILURE TO KEEP VEHICLE UNDER CONTROL)

47.     Plaintiff realleges the allegations contained in paragraphs 1 through 46 above as though fully set forth below.

48.     Defendant Saint Julien failed to operate the Semi-Truck under his control in a safe or proper manner at the time and place which is the subject of this Complaint.

49.     As a result of Defendant Saint Julien's failure to keep the Semi-Truck under control, the Semi-Truck which Defendant Saint Julien was operating caused the Accident described above resulting in Plaintiff suffering severe and painful personal injuries.

50.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages in an amount in excess of $1,000,000.00.

51.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

## THIRD CAUSE OF ACTION
### (VIOLATION OF UTAH CODE)

52.     Plaintiff realleges the allegations contained in paragraphs 1 through 51 above as though fully set forth below.

53.     Defendants were negligent in operating the Semi-Truck at the time and place as

9

alleged herein above in violation of the rules of the road and statutes and ordinances of the State of Utah.

54.     Defendants operated the Semi-Truck in a willful and wanton fashion and in total disregard of the safety of other persons or property.

55.     <u>Utah Code Ann.</u> §41-6a-528 provides, in relevant part:

> A person is guilty of reckless driving who operates a vehicle:
> (a) in willful or wanton disregard for the safety of persons or property;

56.     Defendant Saint Julien, individually and as an agent of Defendant 48 States Transport FL and/or Defendant 48 States Transport TN, operated the Semi-Truck in such a manner that it demonstrated a willful and wanton disregard for the safety of Plaintiff.

57.     Defendant Saint Julien, individually and as an agent of Defendant 48 States Transport FL and/or Defendant 48 States Transport TN, operated the Semi-Truck in a reckless manner and in violation of <u>Utah Code Ann.</u> §41-6a-528 which clearly demonstrates that Defendants' operation of the Semi-Truck at the time and place relevant hereto was per se reckless

58.     Defendant Saint Julien were negligent in operating the Semi-Truck at the time the Semi-Truck struck Plaintiff.

59.     By reason of Defendant Saint Julien's negligence, Plaintiff was injured and sustained the damages described above.

60.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement,

10

physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

61.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

### FOURTH CAUSE OF ACTION
### (NEGLIGENT ENTRUSTMENT)

62.     Plaintiff realleges the allegations contained in paragraphs 1 through 61 above as though fully set forth below.

63.     Defendants 48 States Transport FL and/or 48 States Transport TN was/were negligent in allowing Defendant Saint Julien to drive the Semi-Truck on the day of the Accident.

64.     Defendants 48 States Transport FL and/or 48 States Transport TN is/are responsible for the harm to Plaintiff based upon the following:

(a)     Defendants 48 States Transport FL and/or 48 States Transport TN employed and/or contracted with Defendant Saint Julien to operate the Semi-Truck driven by Defendant Saint Julien at the time of the Accident.

(b)     Defendants 48 States Transport FL and/or 48 States Transport TN permitted Defendant Saint Julien to drive the Semi-Truck.

(c)     Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien as to the route Defendant Saint Julien was to travel on February 5, 2019.

(d)     Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien as to the time Defendant Saint Julien was to travel on February 5, 2019.

65.     At the time Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien to drive the Semi-Truck on February 5, 2019, Defendants 48 States Transport FL and/or 48 States Transport TN knew, or should have known, that Defendant Saint Julien was a careless, reckless, and inexperienced driver.

66.     Defendants 48 States Transport FL and/or 48 States Transport TN was/were negligent in allowing Defendant Saint Julien to drive the Semi-Truck on February 5, 2019.

67.     Defendants 48 States Transport FL and/or 48 States Transport TN's, negligence caused the Accident which is the subject of this Complaint.

68.     By reason of Defendants 48 States Transport FL and/or 48 States Transport TN's negligence, Plaintiff was injured and sustained the damages described above.

69.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

70.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

## FIFTH CAUSE OF ACTION
### (UNSAFE ROUTE)

71.     Plaintiff realleges the allegations contained in paragraph 1 through 70 above as though fully set forth below.

72.     On the morning of February 5, 2019, Defendant Saint Julien was in Evanston, Wyoming.

73.     As Defendant Saint Julien was preparing to depart Evanston, Wyoming on the morning of February 5, 2019, Defendant Saint Julien contacted Defendant 48 States Transport FL and/or 48 States Transport TN and informed said Defendants of the current weather conditions in Evanston, Wyoming.

74.     Defendant Saint Julien requested that he be allowed to remain in Evanston, Wyoming until the snow storm passed and the roads had been cleared.

75.     Defendants Saint Julien was instructed by Defendants 48 States Transport FL and/or 48 States Transport TN to "get on the road" so that the load he was carrying could be delivered timely.

76.     Defendants 48 States Transport FL and/or 48 States Transport TN instructed Defendant Saint Julien to drive the Semi-Truck west out of Evanston, Wyoming along SR-30 down Laketown Canyon in Rich County, Utah.

77.     Defendants 48 States Transport FL and/or 48 States Transport TN could have instructed Defendant Saint Julien to proceed west on I-80, a larger and better maintained highway, rather down the narrow and steeper SR-30 route down Laketown Canyon.

13

78.     Defendants 48 States Transport FL and/or 48 States Transport TN was/were negligent in instructing Defendant Saint Julien to drive the Semi-Truck down the steeper SR-30 Laketown Canyon rather than instructing Defendant Saint Julien to travel on I-80.

79.     Defendants 48 States Transport FL and/or 48 States Transport TN's, negligence caused the Accident which is the subject of this Complaint.

80.     By reason of Defendants 48 States Transport FL and/or 48 States Transport TN's negligence, Plaintiff was injured and sustained the damages described above.

81.     As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

82.     Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that the Defendants' conduct was egregious and reprehensible.

## SIXTH CAUSE OF ACTION
### (SUDDEN PERIL)

83.     Plaintiff incorporates by this reference paragraphs 1 through 82 above as though fully set forth below.

14

84.   Immediately prior to the Accident, Plaintiff was faced with imminent danger when Defendant Saint Julien lost control of the Semi-Truck and the Semi-Truck left SR-30 at the Accident Site.

85.   Plaintiff was struck by the Semi-Truck as he attempted to move out of the way of the Semi-Truck.

86.   Plaintiff was faced with sudden peril and acted accordingly in attempting to run out of the pathway of the Semi-Truck.

87.   As a result of the injuries sustained by Plaintiff as result of the Accident, Plaintiff should be awarded a judgment against Defendants for the pain and mental anguish endured by Plaintiff, for the medical care and treatment Plaintiff has received, for the future medical expenses Plaintiff will receive, for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff, for Plaintiff's income and revenue from the completion and rental of his mountain home, and for compensatory damages.

88.   Plaintiff should be awarded punitive damages in the maximum amount allowed by Utah law on the basis that Defendants' conduct was egregious and reprehensible.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.   Judgment against Defendants in an amount to be proven at trial for the pain and mental anguish endured by Plaintiff as a result of the Accident.

2.   Judgment against Defendants in an amount to be proven at trial for the medical care and treatment Plaintiff has a received as a result of the Accident.

3.      Judgment against Defendants in an amount to be proven at trial for the future medical expenses for Plaintiff for the injuries sustained as a result of the Accident.

4.      Judgment against Defendants in an amount to be proven at trial for Plaintiff's future lost wages and benefits because of early retirement, physical restrictions, constant pain, and the emotional effects experienced by Plaintiff as a result of the Accident.

5.      Judgment against Defendants in an amount to be proven at trial for Plaintiff's income and revenue from the completion and rental of his mountain home.

6.      For compensatory damages in the maximum amount allowed under Utah law.

7.      For punitive damages in the maximum amount allowed under Utah law on the basis that Defendants' conduct was egregious and reprehensible.

8.      For Plaintiff's costs and attorney's fees incurred in prosecuting this action.

9.      For such other and further relief as the Court deems just and equitable in the premises.

## JURY DEMAND

Pursuant to Rule 38 of the Utah Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all triable issues.

DATED this 17th day of December, 2021.


_____/s/ Robert W. Hughes_____
ROBERT W. HUGHES
Attorney for Plaintiff

# EXHIBIT

## "1"

# UTAH HIGHWAY PATROL
## OFFICER REPORT

**Incident: U12201505**

**Report: R15182069**

**Page: 1 of 2**

**Case: 0119R0115**

## DETAILS

Activity Codes: **701–At Scene of Crash (Crash Not Cleared)**
Location: **MO-30 westbound near milepost 121 Laketown**
Case Disposition: **Citation**
Occurred on: **02/05/2019** From: **10:32** To: **14:00**
Officer Activity on: **02/05/2019** At: **10:32**
Officer Activity to: **02/07/2019** At: **10:38**

## PEOPLE INVOLVED

Name: **NICHOL, JON DAVIES**
| | | | |
|---|---|---|---|
| Age at Incident: 57 | DOB: 07/07/1961 | Race: White | Mobile: (435) 881-7125 |
| Ethnicity: non Hispanic | Hair: Brown | Ht: 5' 11" | |
| Sex: Male | Eyes: Green | Wt: 210 lbs. | |

Residence Addr: 3118 S COUNTRY CLUB GARDEN CITY, UT 84028

Name: **SAINT JULIEN, JEFFREY**
| | | | |
|---|---|---|---|
| Age at Incident: 31 | DOB: 03/23/1987 | Race: Black | Mobile: (407) 749-6420 |
| Ethnicity: Hispanic | Hair: Black | Ht: 5' 10" | |
| Sex: Male | Eyes: | Wt: | |

Residence Addr: 18725 NW 10th Ct Miami, FL 33169

Name: **DATTAGE, ELDEN CHECKETTS**
| | | |
|---|---|---|
| Age at Incident: 73 | DOB: 08/06/1945 | Race: White |
| Ethnicity: non Hispanic | Hair: Gray or Partially Gray | Ht: 5' 8" |
| Sex: Male | Eyes: Hazel | Wt: 230 lbs. |

Residence Addr: 276 E CENTER PROVIDENCE, UT 84332

Name: **ROSKELLEY, DANIEL JON**
| | | | |
|---|---|---|---|
| Age at Incident: 40 | DOB: 03/08/1978 | Race: White | Mobile: (435) 994-1871 |
| Ethnicity: non Hispanic | Hair: Brown | Ht: 5' 8" | |
| Sex: Male | Eyes: Hazel | Wt: 150 lbs. | |

Residence Addr: 3253 S CHUKAR DR GARDEN CITY, UT 84028

## VEHICLE DETAILS

| Owner | Plate/Decal | Expires | VIN | Make | Model | Style | Year | Color |
|---|---|---|---|---|---|---|---|---|
| | (FL) JA96HP | 2020-01-31 | 4V4NC9EHXGN945832 | Volvo | TT | Tractor Truck, Diesel. | 2016 | |

## NARRATIVE

Synopsis: I investigated a crash involving a Rich County deputy who was struck by a semi while outside his vehicle, conducting traffic control.

Details:

1. On Tuesday, February 5, 2019 at approximately 1032 hours, I was on duty in Cache County when I was advised of an injury crash in Rich County in Laketown Canyon on SR-30, near milepost 121. I responded from Cache County and arrived at the mouth of Laketown Canyon at 1155 hours. There was a prior crash at the same location, so that investigating trooper (Josh Preece) was helping with my investigation prior to my arrival. Once I arrived, I remained at the mouth of the canyon to close the canyon to traffic. I was advised that Deputy Jon Nichol was standing outside his vehicle with Officer Dan Roskelley in order to slow traffic down for a crash. They were on a sharp corner where a runaway truck ramp is located. At approximately 1032 hours, a semi truck pulling a trailer was approaching their location, eastbound. The semi truck was coming down the grade on the partially snow-covered road at a speed too fast for the conditions. The semi could not maintain control on the slick road and upon arriving to the curve in the road, failed to take the runaway truck ramp. The semi drove to the left of the truck ramp, striking a snowbank and Deputy Nichol as he tried to run out of the path of the semi. The semi continued up the embankment before striking a rock outcropping.

2. The driver, Jeffrey Saint Julien, and Deputy Nichol were treated at the scene before being transported to Logan Regional Hospital. This all occurred prior to my arrival. Once I gathered all this information and the semis from both crashes were cleared, I responded to Logan Regional Hospital. Once there, I spoke with Saint Julien, who had some bumps and bruises. Prior to talking with him, one of the EMS individuals told me that Saint Julien stated that he did not want to drive in these conditions, but his boss told him he had to. When I spoke with him, he told me that he crested the hill near the brake check area where the speed limit changes from 65 to 50 and he could not slow down. He said the roads were slick and his truck was sliding down the hill. He attempted to brake and steer the semi so it would remain on the road. When he arrived at the curve he could not control the semi at all and ran straight off the road and into the snow.

# UTAH HIGHWAY PATROL
## OFFICER REPORT

**O**

**Incident: U12201505**                                                    **Page: 2 of 2**
**Report: R15182069**                                                     **Case: 0119R0115**

## NARRATIVE

3. When Saint Julien was released from the hospital, I transported him to a local hotel where his company had reserved him a room. While speaking with Saint Julien, I asked him about his trip and his conversation with his company that morning. He advised that he stayed in a truck stop in Wyoming the night before and upon preparing to leave in the storm, he contacted his company to ask if he could stay and wait out the storm. He alleges that he was told he could not and that he had to continue. He then stated that he was given alternate directions that took him off I-80 and eventually onto SR-30 in Utah that would take him to I-15. That was his reason for taking that route. Originally he said the route left him on I-80 until he reached I-84 westbound and on to I-15. He also stated that this trip was his first in snow while on his own.

4. I dropped Saint Julien off at a Comfort Inn in Logan. He still had not retrieved his belongings from the semi as it had severe damage with limited accessibility. Later in the day, I obtained some clothing for Saint Julien and brought them to his hotel room. I was also in contact with Anna, an employee with the trucking company, 48 State Transport. They were arranging to fly Saint Julien home in the next couple of days. I was also advised of video footage in the truck that was inaccessible wirelessly because the truck had entered an area without cellular coverage and was now without power. I was told I would need to retrieve a black piece of equipment from the truck. I responded to the semi truck at Elden Dattage Towing to retrieve Saint Julien's personal belongings and the video box. I eventually did both the next day and gave the items to Saint Julien at his hotel room.

5. I visited Deputy Nichol at the hospital to find out what happened and what his injuries were. He advised me that when he was the semi approaching, it was hard to tell where it was going to end up going. He said it appeared that it was trying to turn to its left, so Deputy Nichol changed his first direction and ran to the right of the semi when it struck the snowbank he was on, while Officer Roskelley and Elden Dattage (tow driver) watched. Both Roskelley and Dattage ran to provide aid to Nichol and eventually Saint Julien. Trooper Preece also responded to provide aid and begin investigation after contacting me. Trooper Travis Mouritsen also arrived to perform a CVSA inspection on the semi. Nichol had abrasions and lacerations on his face and arms. He also had a fracture in one of his arms, but stated his legs were not broken as originally reported.

6. On Thursday, February 7, 2020, I transported Saint Julien from his hotel to an airport shuttle to take him to the Salt Lake International Airport. At that point, the only thing I did not have to complete my investigation was the video off the in-car camera from the semi. Saint Julien was cited for speed too fast for conditions.

End report.

7. I received a copy of the video from 48 State Transport via Trooper Mouritsen a few days after the crash. The video shows the semi going over the centerline and back a few times as it tries to regain control and slow down. The semi then fails to make the curve and runs off the road, striking Nichol as it hits a snowbank.

Video Evidence – Other.
Video Evidence Explaination – semi dash camera.

## REPORTING OFFICER

| Officer's Name | Badge | Signature | Printed On |
|---|---|---|---|
| Brenchley, Cade | 216 | | 01/16/2020 At: 15:41 |

## ASSISTING OFFICERS

| Agency | Officer's Name | Badge |
|---|---|---|
| Utah Highway Patrol | Preece, Joshua | 280 |
| Utah Highway Patrol | Mouritsen, Travis | 191 |

## SUPERVISOR

| Agency | Officer's Name | Badge |
|---|---|---|
| Utah Highway Patrol | Perry, Lee | |

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION

## OFFICER REPORT

**Incident: I18078208**

**Report: R139788**

**Page: 1 of 3**

**Case: 2019-000190**

## DETAILS

Activity AA.PARK-Agency / Officer Assist. GN.PARK-General Contact
Codes:
Location: HO-SR 30  Laketown Canyon  Laketown
Case Inactive
Disposition:
Occurred on: 02/05/2019 From: 08:35 To: 13:00
Officer 02/05/2019 From: 08:45 To: 12:05
Activity on:

## ORGANIZATIONS INVOLVED

IO  Name: Rich County Sheriff's Office
Addr:
Involvement: Involved.Other

## NARRATIVE

### REQUEST FOR ASSISTANCE

Deputy Wahlberg (1E-4) asked me to assist with traffic on a semi crash in Laketown Canyon. I was at Dee's in Laketown at the time and I told him I would be en-route.

### TRAFFIC CONTROL

I arrived at 0848 hours and was asked to slow traffic coming down canyon (westbound) and at times, to stop traffic for road prep by UDOT or wrecker operations. At about 1020 hours, I was told it was not necessary to stay in my position up the canyon any longer with the improved road conditions so I responded to the truck ramp area where Deputy Nichols (1E-2) was parked. Traffic was still being allowed to pass so we continued to encourage a safe speed by passing motorists.

### SECONDARY CRASH

At around 1030 hours 1E-2 and I noticed a semi-truck with trailer round a corner up canyon from us at a high rate of speed, unable to maintain a lane of travel. At the same time one of the wreckers below us was driving up canyon slowly to reposition. Out of concern that the semi driver may try to round the corner, possibly out of control, I waved at the wrecker operator to stop/get out of the way as possible as the approaching semi was out of his view.

Where 1E-2 and I were standing, our options for escape were dependent on which direction the semi operator tried for at the last couple of seconds rendering us essentially out of options. I do not recall hearing a horn or any warning from the approaching semi and we quickly determined it was out of control. As the semi neared and was within thirty to forty yards, it appeared he may be headed for the runaway truck ramp but may not have seen it soon enough (it was snow covered). 1E-2 had begun to run in the direction of the runaway truck ramp, disappeared in the cloud of snow and appeared to be in the path of the semi as it plowed through the large snow bank in between the ramp and our patrol vehicles. The semi appeared to be traveling at a speed of at least 50 miles per hour as it impacted the snow bank and 1E-2.

### MEDICAL

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION

## OFFICER REPORT

**O**

Incident: I18078208

Report: R139788

Page: 2 of 3

Case: 2019-000190

## NARRATIVE

After the snow cloud settled, I yelled for 1E-2, then noticed him rolling himself out of the path that the semi had made. He had minor blood coming from his face and head in several locations and when I spoke to him, he was confused/disoriented. I called for an ambulance and performed a rapid scan of his person with no other obvious signs of deformity or excessive bleeding. 1E-2 was conscious and breathing. I called for a second ambulance for the truck driver whom I soon heard moaning from up on the hillside. Medical was on scene within a few minutes and took over care of 1E-2 and transported him by ambulance to a hospital in the Logan area.

I found the semi-truck driver out of the cab and on the snow and rocks in front of his truck in a rocky cliff area. The driver was conscious and breathing but appeared to be in shock as he was not fully alert. After speaking to him for a few moments, I found his primary complaint was left side paralysis/numbness with a contusion on the left side of his head and that he was a thirty-one year old male. The driver told me he had climbed out of his truck cab after the impact fearing that it was going to catch fire. There was a smell of fuel around us and I could see fuel leaking from the wreckage below us. The driver was still very concerned about the risk of fire so I helped him as he moved a few more yards away from the wreckage. The driver was placed on a backboard after some medical personnel hiked up the hill and I helped carry him down the hill and to another ambulance. The last ambulance left the scene at around 1100 hours, en-route to Logan.

CONCLUSION

I met with Deputy Johnson (1E-3), Troopers that had arrived and UDOT crew as I remained on scene for a while. I cleared from the incident at 1205 hours and spent some time meeting with Ranger Droesbeke in Laketown.

## REPORTING OFFICER

| Officer's Name | Badge | Signature | Printed On |
|---|---|---|---|
| Roskelley, Daniel | 270 | | 03/13/2021 At: 11:25 |

## ASSISTING OFFICERS

| Agency | | Officer's Name | Badge |
|---|---|---|---|
| Department of Natural Resources Parks and Recreation | | Droesbeke, Richard | 198 |
| Rich County Sheriff's Office | | Wahlberg, Tom | 1E-4 |
| Case: | Incident: 2019-0114 | Report: | |
| Rich County Sheriff's Office | | Nichols, Jon | 1E-2 |
| Case: | Incident: 2019-0115 | Report: | |
| Rich County Sheriff's Office | | Johnson, Jared | 1E-3 |
| Case: | Incident: 2019-0115 | Report: | |
| UHP | | Reese | 280 |
| Case: | Incident: | Report: | |
| UHP | | Brenchley | 216 |
| Case: | Incident: | Report: | |

Department of Natural Resources Parks and Recreation
1594 West North Temple suite 116Salt Lake City, Utah84114

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION

## S

### SUPPLEMENTAL REPORT

**Incident: I18078208**

**Page: 1 of 1**

**Report: R139795**

**Case: 2019-000190**

### OFFENSES

Activity AA.PARK-Agency / Officer Assist, GN.PARK-General Contact
Codes:
Location: NPS on NO-SR 30, Garden City
Case Inactive
Disposition:
Occurred on: 02/05/2019 From: 08:35 To: 13:00
Officer 02/05/2019 From: 08:45 To: 13:00
Activity on:

### NARRATIVE

Jon's injuries include a cut R. thumb, severed tendon in his R. arm, contusions on head, etc. and other deep bruising particularly on his legs. He was discharged from the hospital after only a couple of days. Jon went to the hospital again for an MRI around the first week of March due to increased pain and found his that his R fibula was broken.

It appears as though a large pile of snow previously pushed up by UDOT plows provided some lift to the the semi & trailer (now estimated as traveling at 60+ MPH) and the ensuing burst of snow/ice pushed Jon to the ground with the semi running him over.

The low quality video footage recently obtained by UHP shows the described events and will be attached.

### REPORTING OFFICER

| Officer's Name | Badge | Signature | Printed On |
|---|---|---|---|
| Roskelley, Daniel | 270 | | 09/13/2021 At: 11:27 |

### SUPERVISOR

| Agency | | Officer's Name | Badge |
|---|---|---|---|
| Department of Natural Resources Parks and Recreation | 270 | Stucki, Eric | 221 |

Department of Natural Resources Parks and Recreation
1594 West North Temple suite 116 Salt Lake City, Utah 84114

# DEPARTMENT OF NATURAL RESOURCES PARKS AND RECREATION

## OFFICER REPORT
### Incident: I18078208
### Report: R139788

**Page: 3 of 3**

**Case: 2019-000190**

### SUPERVISOR

| Agency | Officer's Name | Badge |
|---|---|---|
| Department of Natural Resources Parks and Recreation | Stucki, Eric | 221 |



# EXHIBIT C

| | |
|---|---|
| **From:** | Jeri Crook |
| **To:** | Gary Guelker |
| **Subject:** | FW: Claim No. WHKN19020017- Jon Nichol |
| **Date:** | Wednesday, January 5, 2022 11:28:49 AM |
| **Attachments:** | image001.png |
| | image002.png |
| | image005.png |
| | accpt of service (atty).pdf |
| | Complaint.pdf |
| | summons (FL)(2).pdf |
| | summons (Saint Julien).pdf |
| | summons (TN)(2).pdf |

---

Gary:

Thank you.  Either day works, please provide a time convenient for you.

I have attached the Complaint and an Acceptance of Service for your consideration.


*Robert W. Hughes*

*Attorney at Law*
*438 East 200 South*
*Salt Lake City, Utah 84111*
*Telephone:  (801) 364-9075*
*Fax:  (801) 364-9081*
*rwhughes@rhughesattorney.com*


(This email and any files transmitted with it are the property of Robert W. Hughes, Attorney at Law, and his affiliates and is solely for the use of the individual or entity to whom this e-mail is addressed. If you are not one of the named recipients or otherwise have reason to believe that you have received this message in error, please notify the sender and delete this message immediately from your computer. Any other use, retention, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited.)


**From:** Gary Guelker <gguelker@rlattorneys.com>
**Sent:** Wednesday, January 5, 2022 9:58 AM
**To:** Robert Hughes <rwhughes@rhughesattorney.com>
**Cc:** Jeri Crook <jeri@rhughesattorney.com>
**Subject:** RE: Claim No. WHKN19020017- Jon Nichol

Good morning, Bob.  Would have time for a call on this case tomorrow or Friday? I am fairly open both days.  Let me know what works for you.  Thanks.

Gary R. Guelker
Admitted in Utah and Nevada
Salt Lake City Office:  801-960-3655
Las Vegas Office:  702-960-4220